UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERINSON R. HERNANDEZ,

Appellant,

v. Case No: 6:25-cv-2050-JSS

U.S. BANK NATIONAL ASSOCIATION,

Appellee.
_______________________________/

**OPINION**

In this bankruptcy appeal, Appellant, Erinson R. Hernandez, a debtor proceeding pro se, seeks review of the September 12, 2025 order issued in case number 6:25-bk-3109-GER. (*See* Dkts. 1, 1-1.) The order largely granted the motion for stay relief filed by Appellee, U.S. Bank National Association, a creditor, and overruled Hernandez's objection to U.S. Bank's claim in the case. (*See* Dkt. 1-1.) Hernandez has filed a notice of appeal (Dkt. 1), an initial brief (Dkt. 9), and a supplemental brief (Dkt. 20) indicating his position on appeal. U.S. Bank has filed a response brief (Dkt. 23). Upon consideration, the court affirms the September 12, 2025 order.

**BACKGROUND**[1]

Hernandez owns residential property in Kissimmee, Florida, and on March 2, 2007, executed a note "in the principal amount of $192,000." (Dkt. 1-1 at 2.) The

[1] Hernandez's pertinent filings (Dkts. 1, 9, 20) do not demonstrate that the background facts presented in the September 12, 2025 order, (*see* Dkt. 1-1 at 2–4), are clearly erroneous. *See In re Morozov*, 671 B.R. 326, 332 (M.D. Fla. 2025) ("The burden is on the appellant to show that the bankruptcy court's findings of fact are clearly erroneous."). Therefore, the court draws the background facts from the September 12, 2025 order. *See In re Winn-Dixie Stores, Inc.*, 414 B.R. 764, 765 (M.D. Fla. 2009) ("The facts and procedural history leading to the [b]ankruptcy [c]ourt's [o]rder . . . are not in dispute, and the [c]ourt will summarize them briefly.").

note "is secured by a mortgage on the [p]roperty . . . that was executed by [Hernandez] and . . . Ana G. Estevez," a co-debtor. (*Id.*) Defaults on the loan payments prompted national bank U.S. Bank to file a foreclosure action in state court on August 23, 2018. (*Id.*) As part of the foreclosure action, Hernandez and Estevez called into question U.S. Bank's "standing to enforce the note and mortgage" and alleged the bank's "violation of . . . Internal Revenue Code [(IRC)] provisions governing [r]eal [e]state [m]ortgage [i]nvestment [c]onduits." (*Id.* at 3.) The state court "entered orders . . . reject[ing] these arguments." (*Id.*)

The state court set the foreclosure action for a January 31, 2024 bench trial but cancelled the trial after Hernandez filed a petition for bankruptcy under Chapter 13 on January 29, 2024. (*Id.*) Filing the January 2024 petition initiated case number 6:24-bk-394-GER. (*Id.*) However, that bankruptcy case "was dismissed on September 5, 2024[,] for failure to file a feasible Chapter 13 plan." (*Id.*) After the 2024 bankruptcy case was dismissed, the state court set the foreclosure action for a May 28, 2025 bench trial. (*Id.*) On May 23, 2025, Hernandez filed another petition for bankruptcy under Chapter 13. (*Id.*) Filing the May 2025 petition initiated case number 6:25-bk-3109-GER, resulting in this appeal. (*Id.*) Given the 2025 bankruptcy case, the state court cancelled the May 28, 2025 trial. (*Id.*)

In the bankruptcy case, U.S. Bank filed a claim related to the foreclosure on the property, and on June 4, 2025, Hernandez submitted requisite bankruptcy schedules "claiming the [p]roperty as exempt, listing [U.S. Bank]'s claim as a disputed claim in the amount of $192,000, and valuing the [p]roperty at $339,000." (*Id.* (footnotes

omitted).) Hernandez objected to U.S. Bank's claim for the same reasons that he opposed the motion for stay relief, as discussed below. (*See id.* at 2, 4.) Hernandez's Chapter 13 plan asserted that "there was no arrearage," and it proposed "maintain[ing] the current contractual installment payments in the amount of $1,085 [each] month for a period of [sixty] months." (*Id.* at 3 (quotation omitted).) The plan also advanced the standing and IRC arguments that Hernandez and Estevez had raised—and the state court had rejected—in the foreclosure action. (*Id.* at 3–4.) U.S. Bank objected to confirmation of the plan. (*Id.* at 4.) It contended that the plan failed to "provide for pre-petition arrearages owed to" U.S. Bank and that the bank's lien could not be avoided on the ground that the property was Hernandez's principal residence. (*Id.*)

As relevant here, U.S. Bank moved for relief regarding the automatic stay in bankruptcy. (*Id.* at 4–5.) Specifically, the bank argued that under 11 U.S.C. § 362(c)(3), the stay was not in effect because Hernandez "had a pending bankruptcy case that was dismissed during the one-year period preceding the filing" of the 2025 case. (Dkt. 1-1 at 4.) In the alternative, U.S. Bank invoked 11 U.S.C. § 362(d)(4) and argued that "multiple bankruptcy filings affecting the [p]roperty" demonstrated bad faith justifying relief from the stay. (Dkt. 1-1 at 4.) In addition, U.S. Bank asked the bankruptcy court to establish "a two-year bar against the automatic stay being imposed as to the [p]roperty," to terminate (under 11 U.S.C. § 1301(c)) the stay concerning Estevez as a Chapter 13 co-debtor, and to waive the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4). (Dkt. 1-1 at 4–5.) U.S. Bank also moved for attorney fees and costs. (*Id.*)

Hernandez opposed the motion, contending that U.S. Bank "lack[ed] standing to proceed" because "it ha[d] not established itself as the lawful holder of the promissory note with proper endorsements." (*Id.* at 5.) Moreover, according to Hernandez, "an assignment of the loan was made after a cutoff date that render[ed] the assignment void" in light of the IRC provisions governing real estate mortgage investment conduits. (*Id.*) Hernandez further maintained that U.S. Bank "failed to provide original documents," that "the arrearages, fees[,] and costs" calculated by the bank were "inflated, unreasonable[,] and unsubstantiated," and that the bank's claim violated the federal Fair Debt Collection Practices Act (FDCPA) and its state analogue, the Florida Consumer Collection Practices Act (FCCPA). (*Id.*)

The bankruptcy court held a hearing on U.S. Bank's motion for stay relief on August 20, 2025, at 9:30 A.M., at which the bankruptcy court considered the motion and Hernandez's response in opposition to the motion. (*Id.* at 1–2.) In the September 12, 2025 order under review, the bankruptcy court largely granted the motion. (*See id. passim*.) With respect to standing, the bankruptcy court concluded that in light of documentation submitted with the motion, U.S. Bank had "a colorable claim to enforce the note and mortgage for purposes of obtaining relief under [section] 362(d)," as well as "a colorable claim for . . . standing to proceed with the [f]oreclosure [a]ction." (*Id.* at 6.) The bankruptcy court deemed an evidentiary hearing on the issue unnecessary for two reasons. (*Id.* at 6–7.) First, the bankruptcy court noted that when relief from a stay is requested, bankruptcy courts decide standing on the allegations rather than on the evidence. (*Id.*) Second, the bankruptcy court concluded that U.S.

Bank's documentation, including copies of the note, mortgage, and assignments of the mortgage and filings from the foreclosure action, sufficed for standing purposes. (*Id.*)

As to the effectiveness of the automatic stay, the bankruptcy court explained:

> [Hernandez] did not file a motion to extend the automatic stay. As a result, pursuant to [section] 362(c)(3)(A), the automatic stay 'with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease' terminated with respect to [Hernandez] on June 23, 2025—the [thirtieth] day from the [p]etition [d]ate.

(*Id.* at 8.) As to U.S. Bank's other stay-related requests, the bankruptcy court stated:

> [Hernandez and Estevez] have filed seven bankruptcy petitions since defaulting on the mortgage, four of which were after the filing of the [f]oreclosure [a]ction. Because [Hernandez and Estevez] have filed multiple bankruptcies to delay or hinder the foreclosure process that have affected the [p]roperty, the [c]ourt finds [that U.S. Bank] is entitled to relief from the stay as well as prospective relief as to the [p]roperty for a period of two years from entry of this [o]rder pursuant to [section] 362(d)(4)(B). Additionally, the [c]ourt finds that relief from the co[-]debtor stay as to . . . Estevez is appropriate under [section] 1301(c)(3) because [U.S. Bank] has been harmed by repeated bankruptcy filings, which have frustrated [the bank]'s foreclosure efforts; this harm may continue if [U.S. Bank] is further stayed by [section] 1301(a).

(*Id.* at 10 (footnote omitted).) Turning to Hernandez's remaining arguments, the bankruptcy court determined that they entailed "affirmative defenses to be addressed in [s]tate [c]ourt." (*Id.*) Further, because the bankruptcy court granted "stay relief for [U.S. Bank] to pursue the [f]oreclosure [a]ction," the bankruptcy court declined to resolve Hernandez's objections to the bank's calculations of arrearages, fees, and costs. (*Id.* at 11.)

Ultimately, the bankruptcy court terminated both the automatic stay and the co-debtor stay as to U.S. Bank, including "its agents, assigns[, and] successors in interest," in order to permit U.S. Bank to "take any and all action under applicable

state law to exercise its in rem remedies against the [p]roperty." (*Id.*) The bankruptcy court additionally ordered:

> The automatic stay is annulled in any future case involving the [p]roperty for a period of two years from the entry of this [o]rder. No bankruptcy petition filed in such two-year period will stay the foreclosure of the [p]roperty. Clerks of Court may issue sale notices and certificates of title or sale with respect to the [p]roperty without further order of this [c]ourt.

(*Id.* (emphasis omitted).) The bankruptcy court also granted U.S. Bank's request to waive the fourteen-day stay imposed by Rule 4001(a)(4), making the order effective immediately, and awarded U.S. Bank its reasonable attorney fees and costs as "enforceable against the [p]roperty." (*Id.* at 11–12.) Moreover, the bankruptcy court overruled Hernandez's objection to U.S. Bank's claim in the case. (*Id.* at 12.)

## APPLICABLE STANDARDS

In assessing a bankruptcy court's order, a district court "functions as an appellate court." *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). A district court reviews a bankruptcy court's factual findings for clear error, and it reviews legal issues de novo. *In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009); *In re Chira*, 567 F.3d 1307, 1310–11 (11th Cir. 2009); *see In re Sunshine-Jr. Stores*, 198 B.R. 823, 825 (M.D. Fla. 1996) ("The [d]istrict [c]ourt is bound by the findings of fact made by the [b]ankruptcy [c]ourt unless [the district court] determines [the findings to be] clearly erroneous, and due regard shall be given to the opportunity of the [b]ankruptcy [c]ourt to judge the credibility of the witnesses. . . . [However, the a]ppellant is entitled to an independent, de novo review of all conclusions of law and the legal significance accorded to the facts."). Because asserted constitutional errors such as due process violations present

legal issues, they are reviewed de novo. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009) ("review[ing] assertions of constitutional error de novo"); *In re Wizenberg*, 838 F. App'x 406, 413 (11th Cir. 2020) (reviewing the issue de novo when a pro se debtor argued that "the bankruptcy court deprived him of due process"); *Arnall Golden Gregory LLP v. Stroud*, No. 1:18-cv-3755-LMM, 2019 WL 12529177, at *2, 2019 U.S. Dist. LEXIS 238960, at *6 (N.D. Ga. Jan. 28, 2019) ("[T]he [b]ankruptcy [c]ourt's alleged due process violations are reviewed de novo[.]"). With regard to the bankruptcy court's factual findings, the "burden is on the appellant to show that the . . . findings are clearly erroneous." *Sunshine-Jr.*, 198 B.R. at 825. "A factual finding is not clearly erroneous unless, after reviewing all of the evidence, [the district court is] left with a definite and firm conviction that a mistake has been committed." *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018) (quotation omitted).

"A decision to lift [a] stay is discretionary with the bankruptcy [court] and may be reversed only upon a showing of abuse of discretion." *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). The abuse of discretion standard also applies to a bankruptcy court's decision to impose sanctions. *See In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (assessing the bankruptcy court's "imposition of sanctions for an abuse of discretion"). "This standard of review is extremely limited and highly deferential." *Law Sols. of Chi. LLC v. Corbett*, 971 F.3d 1299, 1304 (11th Cir. 2020) (quotation omitted). "An abuse of discretion occurs when a court applies the wrong principle of law or makes clearly erroneous findings of fact." *In re Piazza*, 719 F.3d

1253, 1271 (11th Cir. 2013). "Under the abuse of discretion standard of review[,] there will be occasions in which the reviewing court affirms the lower court even though the reviewing court would have gone the other way had it been the reviewing court's call." *Kiener Maschinenbau GmbH v. Bass*, 808 F. Supp. 3d 1339, 1346 (N.D. Ga. 2025) (alterations adopted and quotation omitted).

Although courts "give liberal construction" to pro se filings, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se parties are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))). The leniency with which courts treat pro se parties does not permit courts to "serve as de facto counsel" or "rewrite an otherwise deficient pleading." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).

**ANALYSIS**

The court liberally construes Hernandez's appellate filings, *see Albra*, 490 F.3d at 829, as asserting that the bankruptcy court erred in six ways: (1) by failing to "requir[e] sufficient proof of standing" from U.S. Bank such as possession of the original promissory note, (2) by "depriving [him] of due process" as through the decision not to hold an evidentiary hearing, (3) by "misinterpreting 11 U.S.C. § 362(c)(3)," (4) by ordering the "two-year prospective bar . . . without specific findings of bad faith or fraud," (5) by "eliminating the [fourteen]-day stay provided

under . . . Rule 4001(a)(4)," and (6) by failing to consider his FDCPA, FCCPA, and IRC contentions and associated arguments. (Dkt. 1 at 1–2; *accord* Dkt. 9 at 1–4; Dkt. 20 at 1–3.) The court notes at the outset that Hernandez does not sufficiently develop, with explanation and citation to legal authority, any of these arguments in his notice of appeal (Dkt. 1), initial brief (Dkt. 9), or supplemental brief (Dkt. 20). He thus forfeits all his arguments on appeal, and the challenged order is due to be affirmed on this basis alone. *See United States v. Holley*, 166 F.4th 139, 151 (11th Cir. 2026) ("requir[ing] an argument to be raised *and developed*"); *United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when the party "cites no legal authority to support" the position); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) ("[The appellants] have abandoned any argument they may have had that the . . . court erred . . . . It follows that the . . . court's judgment is due to be affirmed."); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While [courts] read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citations omitted)). Nonetheless, for the sake of conducting a thorough analysis of the issues, the court addresses the six asserted errors in turn.

**A. Standing**

Section 362(a) establishes the automatic stay in bankruptcy, and section 362(d) empowers the bankruptcy court to grant relief from the stay. 11 U.S.C. § 362(a), (d). "[R]elief from stay proceedings . . . do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor

has a colorable claim to property of the [bankruptcy] estate." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994); *see In re Dees*, No. 19-66217-PWB, 2021 WL 3671110, at *4, 2021 Bankr. LEXIS 2289, at *11 (Bankr. N.D. Ga. Aug. 12, 2021) ("Numerous bankruptcy courts have adopted [this] standard."), *aff'd sub nom. Dees v. New Rez LLC*, No. 1:21-cv-3475-JPB, 2022 WL 3030548, 2022 U.S. Dist. LEXIS 136121 (N.D. Ga. July 29, 2022). "A party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate." *In re Ohlsson*, 587 F. Supp. 3d 1144, 1150 (M.D. Fla. 2021) (alteration adopted and quotation omitted).

In the September 12, 2025 order, the bankruptcy court properly applied this standard and concluded that U.S. Bank had "a colorable claim to enforce the note and mortgage for purposes of obtaining relief under [section] 362(d)," as well as "a colorable claim for . . . standing to proceed with the [f]oreclosure [a]ction." (Dkt. 1-1 at 6.) In reaching these conclusions, the bankruptcy court relied on documents that U.S. Bank submitted with its motion, including copies of the note, mortgage, and assignments of the mortgage and filings from the foreclosure action. (*See id.*) To entitle U.S. Bank to stay relief, these documents were not required to conclusively establish the bank's standing to foreclose; they only needed to support a colorable claim for standing, and they did. U.S. Bank asserts standing to foreclose as the holder of the original note and mortgage. (Dkt. 23 at 15–18.) *See* Fla. Stat. § 673.3011(1) (listing the "holder of [an] instrument" among the persons entitled to enforce the instrument and providing that a person "may be . . . entitled to enforce the instrument even

though the person is not the owner of the instrument or is in wrongful possession of the instrument"); *Deutsche Bank Nat'l Tr. Co. v. Lippi*, 78 So. 3d 81, 84 (Fla. Dist. Ct. App. 2012) ("The party that holds the note and mortgage in question has standing to bring and maintain a foreclosure action."). To the extent that Hernandez seeks to challenge the bank's standing based on documents to which he is not a party, Florida law generally prohibits him from doing so. *See Citibank, N.A. v. Olsak*, 208 So. 3d 227, 230 (Fla. Dist. Ct. App. 2016) ("[B]orrowers cannot defeat a foreclosure plaintiff's standing by relying upon . . . documents to which the borrower is not a party."). Accordingly, the court rejects Hernandez's standing argument.

**B. Due Process**

"The constitutionally[ ]guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard." *Whiteside v. GEICO Indem. Co.*, 977 F.3d 1014, 1021 (11th Cir. 2020) (quotation omitted). Relatedly, section 362(d) authorizes the bankruptcy court to grant stay relief "after notice and a hearing." 11 U.S.C. § 362(d); *cf.* Fed. R. Bankr. P. 9014(a) ("Reasonable notice and an opportunity to be heard must be given to the party against whom relief is sought."). This language in section 362(d) "means after such notice . . . and such opportunity for a hearing as . . . appropriate in the particular circumstances," and in fact, the statute "authorizes an act without an actual hearing" in certain situations when "such notice is given properly." 11 U.S.C. § 102(1); *accord Baker v. Bank of Am., N.A.*, 837 F. App'x 754, 761 (11th Cir. 2020); *see Whiteside*, 977 F.3d at 1021 ("Notice is the very bedrock of due process." (quotation omitted)). "Courts have long recognized that [the notice-and-

hearing standard in bankruptcy] is flexible and the hearing need not be evidentiary in nature." *Baker*, 837 F. App'x at 761 (collecting cases).

Hernandez received notice of U.S. Bank's motion, had the opportunity to argue against the motion, and indeed, submitted a response that the bankruptcy court considered when it decided whether to grant the motion. (*See* Dkt. 1-1 at 4–5.) Further, the bankruptcy court held a hearing before issuing its decision. (*Id.* at 1–2.). Hernandez complains that no evidentiary hearing was held. (*See* Dkt. 9 at 3.) However, the required hearing "need not be evidentiary in nature." *See Baker*, 837 F. App'x at 761. In addition, because Hernandez challenged U.S. Bank's standing, an issue decided on the allegations rather than on the evidence, the bankruptcy court was not required to hold an evidentiary hearing. *See In re Basson*, 713 F. App'x 987, 987 & n.1 (11th Cir. 2018) ("[The pro se debtor] contends that the bankruptcy court erred by not holding an evidentiary hearing on the issue of standing. Standing is determined based on allegations, *see Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011), and as a result, the court was not required to conduct an evidentiary hearing to determine whether [the creditor] had standing [to foreclose on the debtor's real property in state court]. The bankruptcy court conducted a hearing on [the creditor]'s motion for relief from the stay, and that was the only hearing it was required to hold."). Under the circumstances, any failure to conduct an evidentiary hearing does not amount to a due process violation or other reversible error. *See Lord v. True Funding, LLC*, 618 B.R. 588, 592 (S.D. Fla. 2020) ("[The appellant] has not supplied any legal authority to support her argument that an evidentiary hearing was

required at all, at any point. Indeed, the Bankruptcy Code makes no mention of an evidentiary hearing, providing only, under [section] 362(d), a bankruptcy court may grant relief from an automatic stay 'after notice and hearing.' 11 U.S.C. § 362(d). The phrase 'after notice and a hearing' is, in turn, defined as 'after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.' 11 U.S.C. § 102(1)(A). In short, the [c]ourt finds no support for [the appellant]'s contention that the [c]ourt must reverse the bankruptcy court's [decision to annul the stay] because [the bankruptcy court] failed to conduct an evidentiary hearing.").

**C. Section 362(c)(3)**

Hernandez challenges the bankruptcy court's interpretation of section 362(c)(3). (Dkt. 1 at 1–2; Dkt. 9 at 3.) In pertinent part, this statute states:

> [I]f a . . . case is filed by . . . a debtor who is an individual in a case under chapter . . . 13, and if a . . . case of the debtor was pending within the preceding [one]-year period but was dismissed, . . . the [automatic] stay . . . with respect to any action taken with respect to a . . . property securing [a] debt . . . shall terminate with respect to the debtor on the [thirtieth] day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A); *see In re Sadiq*, No. 3:24-cv-1025-MMH, 2026 WL 570506, at *4 n.10, 2026 U.S. Dist. LEXIS 41659, at *8 n.10 (M.D. Fla. Mar. 2, 2026) ("Given [the pro se appellant]'s previous bankruptcy case . . . , it appears that the automatic stay in this case expired after thirty days . . . pursuant to 11 U.S.C. § 362(c)(3)(A)."). The statute allows the bankruptcy court to extend the stay "on the motion of a party in interest . . . after notice and a hearing completed before the expiration of the [thirty]-day period," but "only if the party in interest demonstrates that the filing of the later

case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). "If a bankruptcy court determines that the debtor filed the later case in bad faith, the bankruptcy court cannot extend the automatic stay." *Makozy v. Crawford*, No. 13-61533-CIV-ROSENBAUM, 2013 WL 6162823, at *9, 2013 U.S. Dist. LEXIS 167204, at *25 (S.D. Fla. Nov. 22, 2013). However, even "if the bankruptcy court determines that the case was filed in good faith, it remains in the bankruptcy court's discretion whether to extend the stay—the bankruptcy court *may* extend the stay on a showing of good faith, but it is not required to do so." *Id.*

Hernandez initiated case number 6:24-bk-394-GER when he submitted a Chapter 13 petition in January 2024, and that case was dismissed in September 2024. (Dkt. 1-1 at 3.) Hernandez filed another Chapter 13 petition on May 23, 2025, initiating the 2025 bankruptcy case at issue in this appeal. (*Id.*) Because the 2024 case was pending within a one-year period before the filing of the 2025 case, the automatic stay terminated thirty days after May 23, 2025, pursuant to section 362(c)(3)(A). *See* 11 U.S.C. § 362(c)(3)(A); *Sadiq*, 2026 WL 570506, at *4 n.10, 2026 U.S. Dist. LEXIS 41659, at *8 n.10. The record does not indicate that Hernandez was somehow prevented from moving to extend the stay before the thirty-day period expired. If he had done so and had demonstrated good faith in his motion, the bankruptcy court could have extended the stay but was not required to do so. *See* 11 U.S.C. § 362(c)(3)(B); *Makozy*, 2013 WL 6162823, at *9, 2013 U.S. Dist. LEXIS 167204, at *25. Because Hernandez did not move for an extension, the automatic stay terminated thirty days after May 23, 2025. Applying Rule 9006(a)(1), the bankruptcy court

concluded that the stay terminated as to Hernandez on June 23, 2025. (Dkt. 1-1 at 8 & n.39.) This calculation was correct. *See* Fed. R. Bankr. P. 9006(a)(1).

**D. Specific Findings of Bad Faith or Fraud**

Section 362(d)(4)(B) requires a bankruptcy court to "terminat[e], annul[], modify[], or condition[]" the automatic stay "of an act against real property . . . by a creditor whose claim is secured by an interest in [the] real property" if the bankruptcy court "finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting [the] real property." 11 U.S.C. § 362(d)(4)(B); *accord In re Meus*, 718 F. App'x 937, 940 (11th Cir. 2018) ("[A] bankruptcy court shall grant relief from the automatic stay to a creditor whose claim is secured by an interest in real property if, after notice and a hearing, the court finds that the filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy filings affecting [the] real property." (alteration adopted and quotation omitted)). "[T]his relief from the stay is binding on any other bankruptcy case to affect the real property for the two years following the order if the order is recorded in compliance with applicable [s]tate laws." *Rodriguez v. Murphy*, No. 13-23363-CIV-ROSENBAUM, 2014 WL 1414424, at *4, 2014 U.S. Dist. LEXIS 50447, at *11 (S.D. Fla. Apr. 9, 2014) (citing 11 U.S.C. § 362(b)(20), (d)(4)). Section 362(d)(1) concerns granting stay relief "for cause." 11 U.S.C. § 362(d)(1). As acknowledged in the September 12, 2025 order, (*see* Dkt. 1-1 at 9), although "[t]here is no set list of circumstances that a bankruptcy court is required to consider" under this cause standard, appropriate "case-specific

factors" include "whether the debtor has acted in bad faith," the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," and "pending state court proceedings." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (quotation omitted). The reasons satisfying section 362(d)(1)'s cause standard may also support a scheme to delay, hinder, or defraud under section 362(d)(4)(B). *See, e.g.*, *Baker*, 837 F. App'x at 763–64 (affirming a decision involving stay relief because the bankruptcy court not only "adequately explained that it found cause [under section 362(d)(1)] to grant [a] request for . . . prospective relief from the automatic stay" but also "satisfied the requirements of [section] 362(d)(4)" through factual findings establishing "a scheme to delay . . . creditors from foreclosing on [a] property" (quotation omitted)).

Further, with respect to section 362(d)(4)(B), "[w]hether a series of bankruptcy filings is, or is not, a scheme to delay, hinder, or defraud a creditor[] must be determined based on the totality of the facts and circumstances of the cases." *In re Danley*, 540 B.R. 468, 476 (Bankr. M.D. Ala. 2015); *see Koutsagelos v. PII SAM, LLC*, No. 12-CV-1703 (NGG), 2013 WL 2898120, at *4, 2013 U.S. Dist. LEXIS 83418, at *10 (E.D.N.Y. June 4, 2013) ("[B]ankruptcy courts are advised to adopt a holistic approach[.]" (citing *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999))). Factors for consideration in the section 362(d)(4)(B) analysis commonly include (1) "the timing of the debtor's bankruptcy cases relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales," (2) "the debtor's lack of changed circumstances between cases," (3) "dismissal of the debtor's previous cases

without confirmation or discharge," (4) "the debtor's inability to fund a plan," and (5) "the debtor's failure to make mortgage payments for a long time." *Grier v. U.S. Bank Tr. N.A.*, No. 1:22-cv-1234-MLB, 2023 WL 4359476, at *3, 2023 U.S. Dist. LEXIS 120247, at *8 (N.D. Ga. May 24, 2023). In addition, "equitable considerations, such as balancing prejudice to the debtor against hardship to the moving party, . . . are relevant in determining" issues of stay relief. *In re Mack*, 347 B.R. 911, 916 (Bankr. M.D. Fla. 2006). Although the holistic section 362(d)(4)(B) analysis should, in general, entail consideration of factors like the above, courts typically do not require "magic words that bankruptcy courts must include in [their] orders." *See, e.g.*, *In re McConathy*, 111 F.4th 574, 585 (5th Cir. 2024).

The court also notes that a bankruptcy court "has the authority to impose sanctions based on a finding of bad faith." *In re Porto*, 645 F.3d 1294, 1303 (11th Cir. 2011). That said, a sanctioning court "must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctions." *Id.* at 1304 (quotation omitted). A debtor's filing of bankruptcy petitions in a scheme to delay, hinder, or defraud creditors generally indicates the debtor's bad faith. *See Mitrano v. Cucinelli*, No. 6:25-cv-00974-AGM, 2026 U.S. Dist. LEXIS 151248, at *3–4 (M.D. Fla. July 9, 2026) (affirming the bankruptcy court's finding that the debtor "filed his bankruptcy petition in bad faith to delay or hinder creditors").

In the order under review, the bankruptcy court stated as factual background that Hernandez initiated the 2024 bankruptcy case two days before the trial date in the foreclosure action, that the trial was consequently cancelled, that the 2024 case was

dismissed for failure to submit a feasible plan, that Hernndez initiated the 2025 bankruptcy case five days before the new trial date in the foreclosure action, and that the trial was again cancelled. (Dkt. 1-1 at 3.) The bankruptcy court then noted that U.S. Bank requested "relief from the automatic stay pursuant to [section] 362(d)(4) based on bad faith as evidenced by multiple bankruptcy filings affecting the [p]roperty." (*Id.* at 4; *accord id.* at 8.) In considering the request, the bankruptcy court made the factual finding—uncontested on appeal—that Hernandez and Estevez had "filed seven bankruptcy petitions since defaulting on the mortgage, four of which were after the filing of the [f]oreclosure [a]ction." (*Id.* at 10.) The bankruptcy court additionally determined that the "repeated bankruptcy filings" had harmed U.S. Bank by frustrating the efforts to foreclose on the property and that this harm could persist if U.S. Bank was "further stayed." (*Id.*) The bankruptcy court concluded that "to delay or hinder the foreclosure process," Hernandez and Estevez "filed multiple bankruptcies . . . that . . . affected the [p]roperty," and accordingly, the bankruptcy court granted U.S. Bank's request. (*Id.*)

Contrary to Hernandez's position on appeal, the bankruptcy order sets forth "specific findings as to the . . . conduct . . . warrant[ing] sanctions," *see Porto*, 645 F.3d at 1304, namely, Hernandez and Estevez's bad-faith use of the bankruptcy system to delay or hinder U.S. Bank's foreclosure on the property, *see Mitrano*, 2026 U.S. Dist. LEXIS 151248, at *3–4. In addition, the order illustrates that in analyzing the issue, the bankruptcy court considered "the totality of the facts and circumstances" of the pertinent cases. *See Danley*, 540 B.R. at 476. For example, the bankruptcy court noted

"the timing of the . . . bankruptcy cases relative to each other"—recent enough to yield section 362(c)(3) consequences, as explained above—and "to proceedings in the foreclosure action," specifically the trials that were cancelled as a result of the bankruptcy cases. *See Grier*, 2023 WL 4359476, at *3, 2023 U.S. Dist. LEXIS 120247, at *8. The bankruptcy court examined Hernandez and Estevez's bankruptcy history holistically, *see Koutsagelos*, 2013 WL 2898120, at *4, 2013 U.S. Dist. LEXIS 83418, at *10, observing that the debtors filed seven petitions after they defaulted on the mortgage, including four after the foreclosure action commenced. This practice of defaulting and then delaying foreclosure through bankruptcy proceedings, of necessity, corresponded with a "failure to make mortgage payments." *See Grier*, 2023 WL 4359476, at *3, 2023 U.S. Dist. LEXIS 120247, at *8.

Additionally, as the bankruptcy court stated, the 2024 case was dismissed for failure to file a feasible plan. The case was thus dismissed "without confirmation or discharge." *See id.*; *see also* 11 U.S.C. § 1325(a)(6) (listing as a condition for confirmation of a Chapter 13 plan the debtor's ability "to make all payments under the plan and to comply with the plan"); *In re Wiggles*, 7 B.R. 373, 377 (Bankr. N.D. Ga. 1980) (explaining that this statute "provides a *feasibility standard of confirmation* by requiring a finding that the debtor will be able to make the payments and consummate the plan" (emphasis added)); *Viecelli v. Seacoast Nat'l Bank*, No. 6:15-cv-682-Orl-41KRS, 2017 WL 1426628, at *2, 2017 U.S. Dist. LEXIS 60921, at *7 (M.D. Fla. Apr. 21, 2017) (reflecting that plan confirmation necessarily precedes discharge insofar as a "proposed bankruptcy plan becomes effective upon confirmation" and "will result in

a discharge of the debts listed in the plan if the debtor completes the payments the plan requires" (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010))). Further, when the bankruptcy court concluded that U.S. Bank had been harmed because the bank's efforts to foreclose had been repeatedly frustrated through bankruptcy proceedings, the bankruptcy court addressed "equitable considerations" concerning "hardship to the moving party." *See Mack*, 347 B.R. at 916.

In light of the above, the bankruptcy court did not err when it imposed the two-year prospective bar. The bankruptcy court considered appropriate factors. To the extent that the bankruptcy court was required to make specific findings of bad faith, it made them, and they justified the relief that it granted.

**E. Fourteen-Day Stay**

Rule 4001(a)(4) provides that an order granting stay relief is stayed for fourteen days after the order is entered, "[u]nless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(4); *see In re Ware*, 562 F. App'x 850, 852 (11th Cir. 2014) ("An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of [fourteen] days after the entry of the order, unless the court orders otherwise." (quoting a prior version of Rule 4001)). Typically, when deciding whether to waive this fourteen-day stay such that an order becomes effective immediately, bankruptcy courts employ section 362(d)(1)'s cause standard. *See In re Skubinski*, 677 B.R. 387, 393–94 (Bankr. M.D. Fla. 2026) (applying section 362(d)(1) and "find[ing] that ample cause exist[ed] to grant relief from the stay in the form of . . . a waiver for cause of the [fourteen]-day stay provided by Rule 4001[(a)](4)"

(quotation omitted)). Moreover, where a bankruptcy court determines that a debtor has carried out a scheme to delay, hinder, or defraud creditors, the bankruptcy court may, as here, waive the fourteen-day stay so that the creditors "can pursue [their] in rem remedies." *In re Aqueron*, No. 6:20-bk-04994-LVV, 2020 WL 8837138, at *1, 2020 Bankr. LEXIS 3684, at *3 (Bankr. M.D. Fla. Dec. 17, 2020).

In this case, the bankruptcy court found cause to grant the requested stay relief because Hernandez and Estevez "filed multiple bankruptcies to delay or hinder the foreclosure process." (Dkt. 1-1 at 10; *see id.* at 9 ("Under the circumstances, the [c]ourt shall grant relief from the automatic stay for cause." (quotation omitted)).) In light of Hernandez and Estevez's scheme to delay or hinder a creditor, the bankruptcy court also granted relief under section 362(d)(4)(B). (*Id.* at 10.) As explained above, the grant of relief under section 362(d)(4)(B) was not erroneous. The findings that supported the bad-faith scheme to delay, hinder, or defraud demonstrated cause, as well. *See Baker*, 837 F. App'x at 763–64. In any event, stay-related decisions normally "lie[] in the sound discretion of the bankruptcy court," *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992), and Hernandez has not established that the bankruptcy court abused its discretion when it waived the fourteen-day stay. *See Skubinski*, 677 B.R. at 393–94; *Aqueron*, 2020 WL 8837138, at *1, 2020 Bankr. LEXIS 3684, at *3.

**F. Hernandez's Remaining Arguments**

Hernandez asserts that the bankruptcy court improperly failed to consider his remaining arguments, particularly his FDCPA, FCCPA, and IRC defenses. (Dkt. 9 at 2, 4; Dkt. 20 at 2.) To begin, the bankruptcy court acknowledged these arguments.

The bankruptcy court stated that in the foreclosure action, Hernandez and Estevez advanced arguments associated with standing and the IRC that the state court rejected. (Dkt. 1-1 at 3 & n.6.) The bankruptcy court summarized Hernandez's opposition to U.S. Bank's motion as including similar standing and IRC contentions in addition to FDCPA and FCCPA arguments. (*Id.* at 5.) The bankruptcy court devoted sections of its analysis to the standing issue, (*id.* at 5–7), and to Hernandez's other arguments, which it regarded as "affirmative defenses to be addressed in [s]tate [c]ourt," (*id.* at 10–11). As explained above, the standing analysis was correct.

The bankruptcy court was also correct that Hernandez's remaining arguments do not present "a basis for an objection to claim." (*Id.* at 10.) *See In re Letennier*, No. 23-60531-6-PGR, 2024 WL 1596883, at *4, 2024 Bankr. LEXIS 893, at *11–12 (Bankr. N.D.N.Y. Apr. 11, 2024) (denying a pro se debtor's objection to a creditor bank's claim when the "[d]ebtor raised the [FDCPA] as a basis for objecting" because "the FDCPA cannot be used to displace the Bankruptcy Code's claims objection process" (citing *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 234 (2017), and *In re Jacques*, 416 B.R. 63, 79 (Bankr. E.D.N.Y. 2009))); *see also Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1265 n.2 (11th Cir. 2022) ("The FCCPA is the Florida analogue to the FDCPA, and generally[,] the two [statutes] are construed in similar fashion where the statutory language is the same."). The court notes that the "core dispute" before the bankruptcy court involved "a mortgage foreclosure on residential real estate, a subject typically adjudged in the state court and governed by state law," *Preston v. Fishman*, No. 8:10-cv-2300-T-23TBM, 2011 WL 129843, at *2, 2011 U.S. Dist. LEXIS 5854, at *5 (M.D.

Fla. Jan. 14, 2011), and that "Florida state courts routinely entertain federal statutory . . . claims . . . as counterclaims or affirmative defenses in state foreclosure actions," *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*, No. 3:10-cv-423-J-34TEM, 2011 WL 4529604, at *9, 2011 U.S. Dist. LEXIS 113124, at *33 (M.D. Fla. Sept. 30, 2011) (collecting cases). As necessary in foreclosure actions, Florida courts interpret the IRC, among other federal statutes. *See, e.g.*, *Sperling v. United States*, 994 So. 2d 1139, 1140 (Fla. Dist. Ct. App. 2008) (applying 26 U.S.C. § 7425(a) in a state foreclosure action); *United States v. First Fed. Sav. & Loan Ass'n*, 155 So. 2d 192, 192–93 (Fla. Dist. Ct. App. 1963) (consulting the text of the IRC and Supreme Court caselaw about the IRC to decide "whether [a] recorded federal tax lien should have been accorded priority over a mortgagee's claim for attorney[] fees incurred in a foreclosure action after the federal tax lien attached to the property"). "[T]he filing of a claim [is] not false simply because affirmative defenses to payment," such as defenses invoking federal statutes, "may exist." *Boswell v. Bonial & Assocs., P.C.*, No. 3:19-cv-00112-TCB-RGV, 2021 WL 5033991, at *5, 2021 U.S. Dist. LEXIS 213425, at *14 (N.D. Ga. June 28, 2021) (quotation omitted).

Overall, after reviewing the record and considering Hernandez's position on appeal, the court does not perceive any errors in the September 12, 2025 order. Therefore, the order is due to be affirmed. *See In re Ohlsson*, 565 F. Supp. 3d 1235, 1243–44 (M.D. Fla. 2021) ("Finding no error, this [c]ourt affirms the bankruptcy court's . . . order . . . ." (emphasis omitted)), *aff'd*, No. 21-13936, 2022 WL 16985512, 2022 U.S. App. LEXIS 31795 (11th Cir. Nov. 17, 2022).

## CONCLUSION

Accordingly:

1. The September 12, 2025 order, (*see* Dkt. 1-1), is **AFFIRMED**.
2. This bankruptcy appeal is **DISMISSED**.
3. The Clerk is **DIRECTED** to enter judgment accordingly, to terminate any pending motions and deadlines, to close this case, and to send a copy of this order to the Clerk of the United States Bankruptcy Court for the Middle District of Florida.

**ORDERED** in Orlando, Florida, on August 3, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties